# REPORTS OF CASES ADJUDGED

### IN THE

# SUPREME COURT OF PORTO RICO

PEOPLE. PLAINTIFF AND APPELLEE, *v.* RIERA, DEFENDANT AND APPELLANT.

APPEAL from the District Court of San Juan in an action of Ejectment.

No. 1621.—Decided January 13, 1919.

UNAPPROPRIATED LAND—TREATY OF PARIS.—The land in Porto Rico that the Spanish government validly sold before its war with the United States did not pass by virtue of the Treaty of Paris into the possession of the United States, nor did that Government cede it to The People of Porto Rico.

ID.—ID.—VOID SALE.—If a deed to certain lands in Porto Rico, made by Spanish government officials before the war is void, Spain had not lost its ownership thereof at the time of signing the Treaty of Paris ceding said lands to the United States, and The People of Porto Rico can claim them as grantee.

ID.—SALES BY SPANISH OFFICIALS.—As Spain could inquire into the validity of the deeds of sale made by its officials in Porto Rico and annul them, so can the United States as its grantee, and The People of Porto Rico as grantee of the United States, inquire into the validity of such titles, although this may be an investigation of the acts of the Spanish officials.

ID.—ID.—CONDITION.—The Regulations of April 17, 1884, for the sale of unappropriated lands in this Island did not prescribe the time within which those in possession of the lands could acquire ownership of the same, and the time was fixed by the Royal Decree of February 1, 1894, according to which that time expired on April 17, 1894, it being a condition, furthermore, that the lands must have been under cultivation for at least two years prior to that date, or since April 17, 1892. The Treasury Department of Porto Rico decided, on March 29, 1894, that petitions might be presented until April 17, 1894.

ID.—ID.—ID.—A sale of unappropriated lands by the Treasurer of Porto Rico is void if the petition was made after April 17, 1894, and also if at that time the lands had not been under cultivation for two years.

ID.—ID.—ID.—THIRD PERSONS.—It not appearing from the Registry of Property that the sale of unapropriated lands was petitioned for after April 17, 1894, nor that on that day the lands had not been under cultivation for two years, such defects can not prejudice a third person, for it is in the registry and not elsewhere that the grounds for the nullity should be shown in order that they may affect a third person. The character of third person is judged from the records and entries.

1

ID.—ID.—ID.—SCIENTER—OPINION—VALUATION.—In order that a third person may lose his character as such, it is necessary that he acquire with knowledge of the invalidating defects or liens affecting the property, and such knowledge evidently must be established by facts which he must necessarily have known or by acts performed by him. The opinion of an engineer as to the validity of the vendor's title can not deprive a third person of his character as such, nor can the valuation given to a property in the registry raise of itself any presumption against the validity of the title.

The facts are stated in the opinion.

*Mr. Francisco Soto Gras* for the appellant.

*Messrs. Salvador Mestre, Fiscal,* and *Howard L. Kern, Attorney General,* for the appellee.

MR. JUSTICE ALDREY delivered the opinion of the court.

The People of Porto Rico brought an action of ejectment against José D. Riera, alleging that without a legal title he is in possession of a certain parcel of land in the ward of Puerta de Tierra of this city which belongs to the plaintiff under a grant made to it by the Government of the United States, which acquired the land from Spain by virtue of the Treaty of Paris signed by the two nations on December 10, 1898.

Plaintiff prays that besides restoring the property the defendant be adjudged to pay a certain amount of money for the mesne profits derived therefrom.

The defendant answered, denying that either The People of Porto Rico or the Government of the United States had ever owned the said parcel of land, because prior to the signing of the Treaty of Paris, or on September 27, 1897, the Treasurer of Porto Rico, in the name of the Spanish Government, conveyed to Manuel J. Gestera y Gestera for a valuable consideration Spain's title of ownership to the said property which now belongs to the defendant by a purchase title which is recorded in the Registry of Property of San Juan, in which the Government of Spain and subsequent purchasers also recorded their titles. He denied that he was liable for any mesne profits and also pleaded his status as a third person, alleging that he acquired the property from

a person who appeared in the registry of property as the owner of the same unconditionally and without any defect.

The action terminated in a judgment sustaining the complaint as to the restoration of the property to the plaintiff and dismissing it as to the claim for mesne profits. From that judgment the defendant took this appeal.

The defendant alleged in his answer, and urges the same in this appeal, that the plaintiff has no cause of action in ejectment because it is not the owner of the property sued for, and this is the first question to be considered.

The appellant does not deny that Spain was the owner of the land claimed in this action, but contends that inasmuch as it sold the land to Gestera in 1897, or before the declaration of war between the United States and Spain on April 25, 1898, Spain could not and did not dispose of the said land in signing the Treaty of Peace in Paris on December 10, 1898, by which it ceded to the United States the Island of Porto Rico and the properties therein belonging to the Crown of Spain; therefore the United States Government has never been the owner of the said land and could not grant it to The People of Porto Rico, nor can The People of Porto Rico maintain an action to recover it.

If the sale made by the Spanish authorities in Porto Rico to Gestera in the year 1897 is valid the appellant is right, because Article VIII of said Treaty of Peace declared that the cession of Porto Rico to the United States should not impair the property or rights which by law belong to the peaceful possession of property of all kinds, including that of private individuals of whatever nationality. On the other hand, if the deed by which Spain appears to have conveyed the ownership of the said land to Gestera is not valid according to law, it follows that Spain had not relinquished such right of ownership when the Treaty of Peace was signed and consequently by the treaty ceded that land to the United States and the United States could and did grant it to The

People of Porto Rico; wherefore, as such owner, The People
of Porto Rico may recover it from any person holding it
under a defective title by reason of the invalidity of Ges-
tera's title.   As regards Spain's ownership of unappropri-
ated lands, such as was the land now in suit, this is a ques-
tion not at issue here and it is sufficient to refer to the cases
of *People* v. *Dimas,* 18 P. R. R. 1019, and *People* v. *Mu-
nicipality of San Juan,* 19 P. R. R. 625.

Hence, the fundamental question in this action is whether
the deed to Gestera was valid and therefore conveyed to him
the ownership of the land then held by Spain and now in
the possession of the appellant; and although the appellant
contends that The People of Porto Rico, as grantee of the
United States, cannot inquire into the acts of the Spanish
authorities executed prior to the war, nevertheless, as the
Treaty of Paris passed to the United States the rights of
ownership held by Spain in this Island, which the United
States granted later to The People of Porto Rico, it is evident
that if Spain could inquire into the legality of the conveyance
made by its officials to Gestera and annul it—a right which
none deny—the United States, as grantee of the rights which
Spain held in this Island, and The People of Porto Rico, as
grantee of the United States, may also inquire into the
legality of Gestera's title, although to do so may require
an investigation of the acts of the Spanish authorities.   It
can hardly be maintained that because no irregularities or
mistakes by the Spanish public officials are found, persons
having no title may continue in possession of lands owned
by Spain and ceded by it to the United States.   Having set-
tled this point, we will proceed to consider Gestera's title.

On April 17, 1884, the King of Spain approved the Regula-
tions for the sale of unappropriated lands in the Island of
Porto Rico, section 5 of which reads as follows:

"Section 5.—Persons in possession of lands without color of title
and unable to plead the right of prescription established in section

2 of these Regulations may acquire the ownership thereof, provided the same are planted with coffee or other agrarian crops referred to in clause 3 of the Royal Order of June 5, 1877, by paying into the Treasury the assessed value of the lands at the time when they were unlawfully taken possession of.''

The Regulations also direct the manner and time in which the payment shall be made; that petitions shall be addressed to the Treasurer; what they shall contain; that the Treasury shall have charge of the proceedings and the steps to which they may give rise; that the decision shall be made by a Superior Board of Adjustment and Sale of Unappropriated Lands, composed of certain officials; how the survey and assessment of the lands shall be made and by whom the proceedings shall be approved; that the Treasurer or his successor in office shall execute the deed when the conveyance is made in this capital.

The Regulations do not fix any time for the presentation of the petition for terminating the proceedings, or for executing the deed of sale.

Subsequently, or on February 1, 1894, the Queen of Spain signed a decree which was published in the *Gazette* of this Island on March 6, 1894, reading as follows:

"Beginning April 17, 1884, the time in which possessors of unappropriated lands in Porto Rico that they have cultivated for at least two years before the termination of such time and that are in the conditions referred to in section 5 of the Royal Decree of the said date, may acquire the ownership of said lands by an agreement with the Treasury by paying the value thereof in accordance with the provisions of section 7 of the said Royal Decree, is extended ten years.''

Some days later, or on March 29, the Treasurer made the following decision which was published in the *Gazette* of April 3, 1894:

"His Majesty the King having extended for ten years the time within which possessors of unappropriated lands in this Island may acquire the same by agreement with the Treasury, provided they

have cultivated the same for at least two years before the termination of that period, which expires on April 17 of this year, the Treasurer, in agreement with this Board, has decided that petitions presented for that purpose will be admitted until noon of said 17th of next April, and notice is given that at the expiration of that period all petitions that may be presented shall be ineffective.

"And in order that ignorance may not be pleaded by those concerned, I recommend that the mayors give notice of this decision in the various wards of their respective jurisdictions.

"Upon being advised of the foregoing the mayors are required to acknowledge its receipt.

"Porto Rico, March 29, 1894, Antonio de Olózaga, Treasurer."

Three years later, or on September 29, 1897, the Acting Treasurer, both as such and as Chief of State in this Province of Porto Rico, appeared before a notary public with Manuel J. Gestera y Gestera and executed to the latter a deed of sale of the land involved in this action for a valuable consideration which was covered into the Treasury.

That deed was presented in evidence at the trial of this action and the notary recited in it, after considering a record exhibited therewith, that Gestera presented a written petition to the Treasury on June 2, 1897, asking that in accordance with the provisions of the Regulations for the sale of unappropriated lands in force in this Island, he be granted the ownership of a tract of marsh or swamp land, which is the land in litigation in this action, based on the fact that he had drained and cultivated the land at his expense and converted it into solid ground "three years previously," expending considerable money and materially improving the sanitation of the locality.

The other matters transcribed in the record whose object was to secure the said deed, are not important for the decision of this case.

The original record was not introduced at the trial because it was shown that it had been lost, but the facts that we have recited therefrom, taking them from the deed of

conveyance to Gestera, will serve us as a basis for considering the question of law at issue, for they are set out in a document signed by the parties to this action.

The foregoing will enable us to consider the fundamental question involved in this action.

Inasmuch as the Regulations of April 17, 1884, for the sale of unappropriated lands in this Island did not prescribe the time within which those in possession of the lands could acquire ownership of the same, what the Royal Decree of February 1, 1894, really did was to fix the time within which the ownership of unappropriated lands could be so acquired rather than to extend any period, and according to the said decree that period expired on April 17, 1894, provided, furthermore, that the lands had been under cultivation for at least two years prior to that date, i. e., since April 17, 1892.

If the Royal Decree had been construed strictly it might have been required that the ownership should already have been acquired on April 17, 1894, but as the Treasury undoubtedly took into account that the said decree had been published in this Island on March 6, 1894, and that according to the Regulations to which it referred certain formalities were necessary after the filing of the petition for acquisition and that they could not be easily complied with within so short a time, he decided, and we think rightly, that petitions might be presented until April 17, 1894. Hence, the petition could be presented before the expiration of the period fixed in the Royal Decree and the granting of title of ownership be yet delayed by the formalities incidental to the petition until a more or less remote date unlimited by any provision of law.

Bearing this in mind, we must hold that when on June 2, 1897, Gestera filed his petition for a title to the land which is now claimed, the time fixed by the said Royal Decree for granting ownership titles to holders of unappropriated lands had expired, and for that reason the Treasurer had no law-

ful authority to grant the ownership title petitioned for after that date, a defect which invalidates Gestera's title.

Nor was the Treasurer of this Island authorized to sell government lands which had not been under cultivation at least since April 17, 1892, and it appears from Gestera's petition that on that date the land was not under cultivation, for in his petition of June 2, 1897, he stated that it had been under cultivation "for three years," or since June, 1894, a date subsequent to that fixed by said Royal Decree as a condition for so selling such lands. The failure to comply with that condition also invalidated Gestera's title.

But does the invalidity of Gestera's title affect the appellant who purchased from the person who appeared in the registry as the owner and recorded his title?

According to articles 33 and 34 of the Mortgage Law, instruments or contracts which are null under the law are not validated by their admission to record, notwithstanding which, instruments or contracts executed or entered into by a person who, according to the registry, has a right to do so, shall not be invalidated with regard to third persons after they have been recorded, even though the interest of such persons should subsequently be annulled or terminated by virtue of a prior deed which was not recorded or for reasons which do not clearly appear from said registry.

As Riera was not a party to the contract entered into by the Acting Treasurer and Manuel Gestera in the year 1897 and is therefore a third person, we should consider what the registry of property contains concerning the contract in order to ascertain whether the record clearly shows the defects invalidating Gestera's title, in which case such invalidity will necessarily affect Riera.

The record of Gestera's title as it appears in the registry of property reads, in so far as pertinent, as follows:

" * * * The State is the owner of this property by right of conquest, as appears from the said first record in which possession

is proved, and as owner, represented by the Treasurer, Alejandro Infiesta García, it sells the same according to the proceeding presented for that purpose, which was approved by the Governor General, to Manuel Gestera for its assessed value of $266.02, which the vendor, in his representative capacity, acknowledges to have been paid into the Treasury before the deed referred to herein was executed. The said Manuel J. Gestera y Gestera, of age, freeholder, married, and a resident of this city, records the said property under title of purchase without special conditions and without prejudice to third persons. All the foregoing appears from the registry and from the first copy of a deed executed in this capital on September 29, last, before Notary Mauricio Guerra.

&ast;          &ast;          &ast;          &ast;          &ast;          &ast;          &ast;

"In witness whereof I affix my signature at San Juan, Porto Rico, this twelfth day of December, 1897. José Ignacio Beyens."

As may be seen from the entry transcribed, it does not show the reason for the invalidity of Gestera's title, for it does not give notice to a third person that the petition for the purchase of the land was made by Gestera after April 17, 1894, which was the limit fixed by the Royal Decree of that year for the acquisition of unappropriated lands by those in possession, nor does it show the other invalidating circumstance that the land was not under cultivation at least since April 17, 1892, which was one of the conditions on which such sales could be made.

The plaintiff-appellee contends however that the invalidity of the deed made to Gestera appears clearly from the registry because it not only states that the land was reclaimed from swamp lands, but also that Gestera acquired it by purchase from the Government in the year 1897, when such sales were not authorized.

The plaintiff could not have been very certain on this point, for instead of confining itself to such evidence as appeared in the registry regarding the invalidity of the title to the property in suit, it resorted to other means of proof; but neither in the first record in the name of the Spanish Crown, nor in the second record in the name of Gestera, nor in the

records subsequent to that of Gestera's title and prior to that of Riera's is it stated that the land was reclaimed from swamps or marshes; and even if this had been stated it would not render the title invalid, for such lands could be sold according to the Regulations and the said Royal Decree of 1894. The case of *People* v. *Dimas, supra,* is not applicable on this point, for what was held in that case was that lands reclaimed from marsh lands belonged to the State unless they were lawfully alienated.

The fact that it appears from the registry that the deed of conveyance to Gestera was executed in the year 1897 does not of itself establish any invalidating defect, for the Royal Decree of 1894 fixed no time for the execution of the deed of sale; nor could the deed conveying the property be executed until an undetermined date subsequent to April 17, 1894, for the petition for ownership could be made up to that date and, according to the Royal Decree of 1894 and the Regulations of 1884, certain formalities were necessary after filing the petition and no limit was set as to them; therefore the date of the deed had to be more or less subsequent to said date, hence the fact that the deed to Gestera was dated in 1897 is no proof of any invalidating defect.

It is contended that one who purchases from a person who appears in the registry as the owner must not only examine the records of that office in order to ascertain whether they show clearly any invalidating defect if he wishes to avail himself of the benefits which article 34 of the Mortgage Law bestows upon third persons, but also must search the records of other offices for the purpose of examining the documents referred to in the registry in order to learn from them whether any invalidating defect exists.

We understand that said article 34 is clear and conclusive that the invalidating defect must appear clearly in the registry itself in order to affect the interests of a third person. The statute expressly so declares; therefore unless it be

sought to violate its provisions and overthrow the object of the legislators in its enactment, it cannot be held that an invalidating defect not appearing in the registry should affect a third person because he would have known of it if he had gone to other offices to examine the documents mentioned in the registry. This would also be adding to the statute something that it did not contain. The legislators intended that only the defects appearing in the registry should prejudice a third person, and if they had desired that defects appearing elsewhere, but in documents mentioned in the registry, should have a like effect, they would have said so.

But this was not in fact the intention of the lawmakers and their reason is easily understood by remembering that their primary object in enacting the Mortgage Law was to facilitate territorial credit and for that purpose guaranteed to third persons that they would not be prejudiced by invalidating defects which did not appear clearly in the registry. If, contrary to the law's provision, the records of the registry were not sufficient to protect third persons, territorial credit would be destroyed, for persons desiring to make real estate contracts would have to go from office to office and from town to town, however distant and inaccessible, to search for and examine all documents, records and proceedings that may have been mentioned in the registry in order to safeguard themselves against invalidating defects in the recorded titles of owners and their predecessors in interest. If that had been the purpose of the law there would, have been no need to enact said article 34.

We have expressed the same opinion on similar questions and so in the case of *Méndez* v. *Celis,* 20 P. R. R. 493, we held that as the Civil Code requires that the reason for disinheritance shall be stated in the will, reference in it to the reasons expressed in an action for divorce brought in a certain court is insufficient. In the case of *Fantauzzi* v.

*Vázquez,* 22 P. R. R. 671, we said that when the law charges a surety with the duty of pointing out certain property of his principal he must specify the property directly and not by reference to some other document or suit. In the case of *Sánchez* v. *Hartzell et. al.,* 26 P. R. R. 620, we held that although it was set out in the registry that the sale was made without prejudice to such rights as certain persons might have, without specifying their rights or stating whether they referred to ownership or any other real right, it is obvious that this can not be considered as constituting a legal notice, and that if any right did exist it was not recorded in the registry in a specific manner as required by law. In the case of *Vélez* v. *Camacho et. al.,* 8 P. R. R. 35, we held that for the purposes of the Mortgage Law the character as a third person must be determined by reference to the records and entries.

In Spanish jurisprudence we find cases very similar to this.

According to the decision of the General Directorate of Registries of Spain of February 4, 1893, Lorenzo Lidueña purchased a property from the Treasury at public auction, but later the Government set aside the sale for the reason, among others, that the notices of sale showed the defect of having been published five days before the sale. Lidueña recorded his title in the registry and when the cancelation of the record was sought on the ground of said nullity, the registrar refused to cancel it for the reason that the property was recorded in the name of a third person who acquired without notice from the record itself of the reasons on which the nullity was based. In the appeal taken from that decision it was argued that the deed of sale to Lidueña, and therefore the registry, should have stated that it was advertised in the *Boletín* of June 15, 1881, that the sale would take place on July 15 following, the day set for the sale, which proved that the notice could not be published in Berja

until the day on which the *Boletín* was received there and consequently that the sale was null and void because notice was not given for the minimun legal period of thirty days; and a motion that a copy of the said deed be annexed to the record of the case together with a certified copy of the record entered in the registry was overruled as to the copy of the deed because the record of the case contained the necessary data for the decision of the appeal, but the registrar was asked for a literal certified copy of the record in the registry and it did not state that the sale was advertised in the *Boletín* of June 15, 1881, to take place on July 15 following. Based on these facts the refusal of the registrar to make the cancelation on the ground that the reason for setting aside the sale did not appear from the registry, was sustained, and it was held to be well settled in the interest of third persons "that only the books of the registry have to be consulted in making contracts involving real property" and that although the reasons for the nullity may appear in the registry they cannot prejudice a third person because "it is necessary that they should result clearly from the registry itself."

On May 13, 1903, 95 *Jur. Civ.* 778, the Supreme Court of Spain rendered judgment in a case in which a mine was sold at public auction under an execution and the purchaser sold it later to another person, whereupon, after all these transactions had been recorded, the sale was declared void because of defects in the execution and an action was brought to cancel the records on the ground, among others, that "a person who sees prior records in the registry and does not inquire into the validity of the acquisitions in their relation to his own, must blame himself for the omission, for the law protects him only against what is unknown to him." On these facts the court held "that according to the clear and conclusive provisions of articles 34, 36 and 37 of the Mortgage Law, acts or contracts executed by a person who, ac-

cording to the registry, has a right to do so, shall not be invalidated with regard to third persons after they have been recorded, even though the interest of the grantor should subsequently be determined on grounds which do not clearly appear from said registry, nor shall rescissory and resolutory actions which owe their origin to causes which do not specifically appear in the registry prevail against third persons." The court also held that in a suit "where the vendor had his title recorded without the expression of any cause that could produce its resolution, the purchaser needs no other guaranty for the security of his title." In the judgment of November 16, 1910, 119 *Jur. Civ.* 338, it was held that " * * * the elements referred to do not show that the particulars enumerated appeared in the registry of property and the purchasers of the properties were not required to take into account a fact which did not appear from the record, or facts which they were not shown to have had knowledge of."

The following judgments of the Supreme Court of Spain and decisions of the General Directorate of Registries also sustain the principle that a third person with a recorded title is prejudiced only by causes for nullity or rescission which appear clearly in the registry itself: Judgments of July 3, 1906, 105 *Jur. Civ.* 28; March 3 and December 4, 1909, 104 and 116 *Jur. Civ.* 18 and 595 respectively; October 8, 1910, 119 *Jur. Civ.* 62. Decisions of July 8 and September 20, 1911.

In the case of *Castelló et al.* v. *Pérez et. al.,* 23 P. R. R. 709, the attorney for the mortgagees in a foreclosure proceeding purchased a certain property at the public auction ordered and an action having been brought to annul the sale for that reason after the property had been conveyed to a third person who had recorded his title, it was held that although the purchaser was the attorney for the foreclosing mortgagees in the action which terminated in the said sale, he bought the property for his client; but that even if he had

purchased the property for himself the nullity of his title would not attach to a third person who purchased from him, because there was no showing in the registry that he was the attorney for the mortgagees in the foreclosure proceeding although it did appear that he was their attorney in another action.

In the case of *Fernández et. al.,* v. *Velázquez,* 17 P. R. R. 716, for the recovery of properties sold under an execution which was alleged later to be null and void, the property being in the possession of third persons at the time the complaint was filed, the same question now under consideration was raised by the appellant's plea "that the defendant should have carried the investigation of his title beyond the limits of the registry, because the books of the registry indicated that one of the conveyances was made in consequence of a lawsuit." This court held that inasmuch as article 18 of the Mortgage Law imposes upon registrars the duty of determining, under their responsibility, the legality of the documents and the capacity of the parties, the defendant might rely upon the opinion of the registrar. To this we now add that the registries are entrusted to competent attorneys who are appointed after a competitive examination and that they also give security to answer for the faithful discharge of the duties of their office.

In brief, then, as it is in the registry of property and not elsewhere that the grounds for the nullity or rescission of instruments or contracts should be shown in order that they may affect a third person whose title is recorded, and as in this case the defect invalidating Gestera's title does not appear from the registry itself, appellant Riera is protected by article 34 of the Mortgage Law against that invalidating defect.

Article 27 of the Mortgage Law provides that for the purposes of that law a third person shall be considered one who has not been a party to the recorded instrument or con-

tract; but as the repeated jurisprudence of the Supreme Court of Spain and also of this court is that one who purchases with knowledge of the invalidating defects or liens affecting the property can not be considered a third person, and such knowledge evidently must be established by facts which he must necessarily have known or by acts performed by the supposed third person, according to the judgment of the Supreme Court of Spain of March 23, 1906, the appellee here maintains that Riera cannot be considered a third person because at the time of the purchase he had knowledge of the opinion of Engineer Armando Morales regarding the validity of Gestera's title.

We might disregard this argument for the reason that the appellee himself admits in his brief that it has not been shown positively whether that conversation took place between Morales and Riera before the latter purchased from Gestera, but we wish to say that the *legal* opinion of an engineer can never be taken into consideration in determining whether or not a title has been conveyed according to law.

It is also urged that Riera loses his character as a third person because, having contracted to pay a large sum of money for a property acquired by Gestera for a small amount, he should have inquired into the validity of Gestera's title and searched the records of public offices for that purpose. The large or small valuation given to a property in the registry does not of itself raise any presumption against the validity of the title.

For the foregoing reasons the judgment appealed should be reversed and substituted by another dismissing the complaint without special imposition of costs.

*Reversed and substituted.*

Chief Justice Hernández and Justice Wolf concurred.

Justices del Toro and Hutchison concurred in the judgment.